STOKES BROS. MFG. CO. v. HELLER et al.

(Circuit Court of Appeals, Third Circuit. May 2, 1900.)

1. PATENTS—INFRINGEMENT—RASP-CUTTING MACHINES.
   The Stokes patents, Nos. 376,400 and 397,254, for improvements in rasp-cutting machines, are neither for primary inventions, and the claims must be limited to the specific combinations described. As so construed, *held* not infringed.

2. SAME.
   The Stokes patent, No. 397,254, for improvements in rasp-cutting machines, *held* not infringed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 96 Fed. 104.

W. C. Strawbridge, for appellant.

John Dane, Jr., for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This appeal involves two letters patent for improvements in rasp-cutting machines, namely, No. 376,400, granted January 10, 1888, to James and George W. Stokes, and No. 397,254, granted February 5, 1889, to Philip S. Stokes. The case turns upon the question of infringement.

The earlier of these patents has five claims, but infringement of the fifth claim only is charged. That claim reads thus:

"(5) In a rasp-cutting machine, the combination of a punching hammer-head, E, the adjusting screw, 33, the flat spring, and the punch, 34, substantially as set forth."

The constituents entering into this combination will be best understood by reference to the following extract from the specification, namely:

"The hammer, E, is recessed in its outer side (see Figs. 5 and 6), and the punch socket, 30, is hinged therein by pivot, 31. The spring, 32, presses the socket outwardly as far as the screw, 33, passing loosely through the back of the hammer-head, will permit. The punch, 34, being driven into the rasp blank, will be carried against the tooth by the inclination of the bevels on the back of the punch, and the more ready yielding of the metal in front of it, which will cause the teeth to be raised very nearly, if not quite, as much as the total displacement of the metal by the punch. The essential feature of this part of the device is the elastically held punch, the details of which may be somewhat changed without departure from the spirit of this invention."

Looking at the above quotation, in connection with the patent drawings, we see that the punching hammer-head, E, of claim 5, is the lower end of the hammer, and includes, as an essential part of the described apparatus, a tool-holding frame, "the punch socket, 30," which is hinged to the hammer-head by the pivot, 31. This socket, carrying the punch, 34, and swinging in its pivot, 31, is pressed outwardly by the flat spring, 32, the movement being limited by the screw, 33, the turning of which will vary the extent of the outward movement, as the screw is set in the socket, 30, and passes loosely through the back of the hammer-head on which the head of the screw bears. It is manifest that the claim here in question is a very specific one. The calls are for "the combination of a punching hammer-head, E, the adjusting screw, 33, the flat spring, and the punch, 34, substantially as set forth." It is not pretended that the defendants infringe any of the other claims of this patent. Do they employ the particular combination described in and covered by claim 5? The proofs require us to answer negatively. We do not find in the defendants' machine the hammer-head, E, of the patent or anything like it. The defendants' hammer moves separately from, and independently of, the tool-holder. Again, the defendants' machine has neither the adjusting screw, 33, nor the flat spring of the patent. Here the parts of the two machines differ substantially, both structurally and in function.

We cannot accede to the proposition advanced by the appellant's counsel that patent No. 376,400 is for a pioneer invention. Not only are earlier patents for rasp-cutting machines produced, but the proofs show that operative rasp-cutting machines were in actual use prior to the date of this invention. That fact is recognized by the specification of this patent; for therein the described invention is represented as an improvement upon prior machines, curing defects therein. The relation of these patentees to the art is that of improvers only. But, if the invention of this patent could be classified as a primary one, still the terms of claim 5 are so restricted that upon no sound principle of construction could it be held to cover the devices used by the defendants. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Wright v. Yuengling, 155 U.

S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64; Lewis v. Steel Co., 17 U. S. App. 296, 8 C. C. A. 41, 59 Fed. 129. We are obliged to hold that infringement by the defendants of claim 5 of patent No. 376,400 is not shown.

The claims of the second patent, No. 397,254, alleged to be infringed, are the following, namely:

"(1) The punch stock held in the anvil frame, and pivoted at or about its center, in combination with a spring or springs applied to its upper end above the pivot, the cutter or punch being held in the stock with its point below the pivot, substantially as shown and described.

"(2) The hammers, J and J', acted upon by springs and cams, one preceding the other, in combination with the anvil frame and the punch stock and punch, substantially as described.

"(3) The anvil frame and pivoted punch stock, H', in combination with the two hammers, J and J', and means for operating the hammers so that one will deliver its blow before the other, substantially as described."

"(6) The punch stock, H', attached to rod, H, and the anvil frame, K, and means for moving the rod, H², and punch stock laterally, in combination with the hammers, means for operating them, the table, F, feed table, F', and means for moving the same, substantially as described."

"(10) The inclined table, F, the punch stock, means for operating the same, the hammers, and means for operating them, in combination with the feed table, F', held in the inclined table, F, and means for intermittently moving the same longitudinally, substantially as described."

It is not deemed to be necessary to go into a prolonged description of the complex organization of the machinery of this patent. A few details, however, particularly pertinent to the above-recited claims, may be noted profitably. A solid frame, E, extends across the machine above the inclined bed plate. An anvil frame, K, is mounted by dovetailed ways, so as to be free for vertical reciprocation with respect to frame, E. Within a recess in the lower portion of the anvil frame is pivotally mounted a punch stock, H', which carries a punch, H. The upper end of the pivoted punch stock is normally in contact with a plate, a', overhanging the recess in which the punch stock is mounted, the upper end of which is yieldingly retained against the face of the anvil frame by a spring encircling a headed stud, which stud is engaged in plate, a''. Two hammers, one of them tubular and inclosing the other, are employed. These hammers are each actuated by a downwardly pressing spring, and are adapted alternately to deliver, one a light blow, and the other a heavy blow, upon the top of the anvil frame, K. The rasp blank is mounted upon a feed table, F', which rests upon an inclined table, F.

Now, the defendants' machine has no anvil frame whatsoever. It has no pivoted punch stock, and it does not have two hammers, but a single hammer only. Therefore it does not embody the constituents of any of the five claims of this patent (No. 397,254) alleged to be infringed. The proofs are entirely convincing that the parts found in the defendants' machine are very materially different in form, function, mode of operation, and combination from those of this patent.

We have already seen that the earlier of the two patents in suit was not a pioneer. Much less can this later patent be regarded as covering a primary invention. The proofs clearly show that it does not. Any construction, then, which would bring the defend-

ants' device within the scope of any of the claims here in question is excluded, as well by the prior art as by the specific terms of the several claims. This view is abundantly sustained by the decisions in the above-cited cases, to which many others might be added. Duff v. Pump Co., 107 U. S. 636, 2 Sup. Ct. 487, 27 L. Ed. 517; Bragg v. Fitch, 121 U. S. 478, 7 Sup. Ct. 978, 30 L. Ed. 1008; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059.

The conclusion of the circuit court that no infringement of either of these patents was shown was right, and accordingly the decree dismissing the bill of complaint is affirmed.