PEIFER v. BROWN & CO.

(Circuit Court, W. D. Pennsylvania. February 19, 1901.)

1. PATENTS—ANTICIPATION—METALLURGICAL FURNACES.
     The Peifer patent, No. 411,226, for an improvement in metallurgical furnaces, was not anticipated by the Howatson British patent.

2. SAME—CONSTRUCTION OF CLAIM—INFRINGEMENT.
     The Peifer patent, No. 411,226, for an improvement in metallurgical furnaces, is limited, by its terms, the state of the prior art, and the proceedings in the patent office, to the particular construction shown, the essential feature of which is the making of lateral air ports through the outer side walls of the furnace, whereby streams of cold air are drawn in and impinge directly against the sides of the neck of the furnace below its floor line, to protect it from the action of the boiling slag, and it cannot be construed to cover any other means of accomplishing the same object. As so construed, held not infringed.

3. SAME.
     That a patent does not adequately cover the actual invention of the patentee is a matter which cannot be remedied by the courts.

In Equity. Suit for infringement of patent. On rehearing. For former opinion, see 85 Fed. 780.

James Negley Cooke and George L. McCleary, for complainant.
Thomas W. Bakewell and James K. Bakewell, for respondent.

ACHESON, Circuit Judge. Upon this rehearing two questions arise: First. Did the Howatson British patent anticipate Peifer's invention, described in and claimed by his patent here in suit? Second. Has the defendant company infringed Peifer's patent?

1. I do not think it necessary to recite or discuss at any length the new proofs. They have been attentively examined. After careful consideration of the specification and drawings of the Howatson patent in connection with the model and the other evidence, my conclusion is adverse to the defendant upon the specific issue raised by the amendment to the answer, to wit, the question of anticipation by Howatson. The Howatson patent, I think, bears the same general relation to the art as the patents which the office cited against the allowance of Peifer's original application. This British patent, in my judgment, no more anticipated Peifer than did the patents which the defendant put in evidence under the original answer.

2. Has there been infringement by the defendant of Peifer's patent? Upon this question the proofs are now full. At the former hearing they were incomplete. Especially were they unsatisfactory for lack of clear evidence as to the construction of the defendant's furnace. That deficiency has been supplied. It is plain upon the face of his patent that Peifer's invention, as described and claimed by him, consists of a specific device to protect the walls of the neck of the heating chamber of a furnace from the action of the boiling slag which accumulates there. In his specification the patentee thus declares himself: "My invention consists in the construction hereinafter described and claimed." The subject-matter of the patent is a particular construction, which is definitely stated and claimed. After a general reference to the patent drawings, the specification proceeds thus:

"In the drawings, 10 represents a metallurgical furnace, of which the neck of the heating chamber is shown at 11. In the side walls, 12, about this heating chamber, there are formed flues, 13, which communicate with the surrounding atmosphere through the medium of ports, 2. The flues, 13, lead to the stack, 14, the upper ends of the flues being preferably slightly contracted. These ports, 2, range along the lower sides of the neck, 11, just below its floor line, so that the draft of the furnace will cause a series of jets or streams of cold air to impinge against the side walls of the neck at the points where they are ordinarily cut away by the slag, and effectually prevent such action."

The patent has a single claim, which is as follows:

"A straight draft metallurgical furnace, 10, having a heating chamber terminating in a neck, 11, and a stack over the neck, the air spaces, 13, in the side walls of the neck extending above and below its floor line, provided below the floor line with the series of cold air inlet ports, 2, opening through the outer side walls, and flues connecting the upper ends of the air spaces with the interior of the furnace, whereby the draft will cause jets of cold air to be drawn through the ports, 2, and impinged against the sides of the neck just below its floor line, substantially as set forth."

Peifer's application was thrice rejected by the patent office upon references to prior patents. These rejections were followed by

amendments in his specification and claim which brought them to their present form. In a communication to the commissioner, transmitting the second amendment, the applicant's solicitors wrote:

"The air spaces without the series of ports, 2, will not effect the objects sought, and the force of the furnace is also necessary to give force to the air, and cause it to impinge against the sides of the neck at the points named."

The proofs before the court establish, I think, that the air ports or lateral holes through the outer side walls whereby jets or streams of cold air are drawn in and caused to impinge directly against the side walls of the neck, is the feature of novelty which distinguishes Peifer's construction from prior devices for cooling the walls of a furnace by currents of air coursing in or along the same. In the defendant's furnace the air is taken from above, and brought down by means of a vertical pipe to the end of a horizontal flue, through which it passes backwardly to a short vertical flue, and down the same into a lower horizontal flue, through which the air passes forwardly. There is some dispute as to the precise location of this lower flue, but according to the clear weight of evidence it does not extend below the floor line of the neck. Certainly, the defendant's furnace does not have the lateral air ports of the Peifer patent. In the defendant's construction there is no impingement of cold air against the side walls of the furnace neck, within the meaning of Peifer's patent. The cooling effected is by means of a current of air coursing through flues in the masonry. It is said that the purpose sought to be effected by the defendant is the same as that contemplated by Peifer. But identity of object is not the test of infringement. There is here a very substantial difference in the means employed. In view of the prior state of the furnace-building art, the proceedings in the patent office upon Peifer's application, the terms of his specification, and his limited claim, it is impossible, in my judgment, so to construe the Peifer patent as to bring within its scope the defendant's furnace. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Railroad Co. v. Mellon, 104 U. S. 112, 26 L. Ed. 639; Knapp v. Morss, 150 U. S. 221, 14 Sup. Ct. 81, 37 L. Ed. 1059; Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 Sup. Ct. 627, 38 L. Ed. 500. If it be true, as suggested by the plaintiff's expert witness, Mr. Clarke, that the patent granted to Mr. Peifer, and accepted by him, did not adequately cover his real invention, it is a misfortune which the court is powerless to redress. McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800; Lewis v. Steel Co., 17 U. S. App. 296, 8 C. C. A. 41, 59 Fed. 129. As to what use the defendant company made of the plaintiff's patented improvement after he left the defendant's employment the testimony is conflicting. Thomas Orgill, who succeeded the plaintiff as master bricklayer in the defendant's works, and has since continued to act in that capacity, testifies positively that, as the several furnaces into which the plaintiff had introduced his construction needed repairs at the neck, his construction was abandoned, and the defendant's above-described construction was substituted,

and that the defendant never afterwards used the plaintiff's construction. This witness speaks from personal knowledge. I do not see how he could be mistaken, and there is no reason for imputing to him willful false swearing. Other witnesses, who likewise testify from actual personal knowledge, fully corroborate Orgill. The weight of evidence here, I think, is with the defendant. I feel satisfied that Mr. Peifer and Mr. Pedder are mistaken in what they say on this subject. Under the pleadings the burden of proof to show infringement is on the plaintiff. Upon the most careful consideration of the evidence I am constrained to hold that the charge of infringement has not been made out. A decree must be entered dismissing the bill, but without costs. The costs down to the time of filing the amendment to the answer were paid by the defendant as the condition of reopening the case. Substantially all the subsequent costs have been incurred in the investigation and trial of the issue—the alleged Howatson anticipation—raised by the amendment. As that issue has been decided against the defendant, I think it but just that all the costs since the amendment was allowed should be paid by the defendant. Let a decree be drawn in accordance with the views expressed in the foregoing opinion.