PEIFER v. BROWN & CO.

(Circuit Court of Appeals, Third Circuit. December 12, 1901.)

No. 47.

PATENTS—INFRINGEMENT—METALLURGICAL FURNACES.

The Peifer patent, No. 411,226, for an improvement in metallurgical furnaces, is limited by its terms, the state of the prior art, and the proceedings in the patent office, to the particular construction shown, the essential feature of which is the making of lateral air ports through the outer side walls of the furnace, below the floor line, and opening into an air chamber connected with the stack, thereby creating a draft which causes the cold air to be drawn in and to impinge against the side of the neck below the floor, to protect it from the action of the boiling slag, and it cannot be construed to cover any other means of accomplishing the same object. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

J. N. Cooke and George L. McCleary, for appellant.

J. K. Bakewell and Thomas W. Bakewell, for appellee.

Before DALLAS and GRAY, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge. This is an appeal from a decree of the United States circuit court of the Western district of Pennsylvania (106 Fed. 938) dismissing a bill charging defendant with infringement of letters patent No. 411,226, granted to Christ Peifer, dated September 17, 1889. The patent in suit is for an im-

provement in metallurgical furnaces known as "straight draft furnaces" for heating piles, etc. It contains a single claim, which is as follows:

"A straight draft metallurgical furnace, having a heating chamber terminating in a neck, and a stack over the neck, the air spaces in the side walls of the neck extending above and below its floor line, provided below the floor line with a series of cold air inlet ports opening through the outer side walls, and flues connecting the upper side of the air spaces with the interior of the furnace, whereby the draft will cause cold air to be drawn through the ports and impinge against the sides of the neck just below its floor line, substantially as set forth."

The object sought to be attained is stated to be "to protect the walls of the heating chamber at the part known as the neck from being cut away by the boiling slag which accumulates at this point." Straight draft metallurgical furnaces, such as are described in the patent in suit, were, at the time of filing the complainant's application, in common use, and the distinctive effect of the intense heat to the hearth, side walls, and neck of the furnace well known, and various means and devices had been used to obviate them. One of these was to apply a current of outside air to the parts subjected to the heat, and thereby, by cooling the bricks, preventing the corrosion, and greatly increasing their durability. That Peifer was not a pioneer in the art appears from an examination of the records of the patent office as set out in the file wrapper of his patent. When the application was first filed, two claims were presented,—"a metallurgical furnace with flues, substantially as described," and "a metallurgical furnace, in the wall of which are formed flues, which communicate with the stack and with ports, substantially as described." The application was rejected because the claims were too broad. There was nothing new in jacketing the superheated walls of a metallurgical furnace with a chamber through which a current of air was drawn from the outside through the stack into which the furnace opened. Reference was made by the examiner to several United States patents as anticipations of the claims of applicant's device. It is unnecessary for us to refer to them here, because the applicant acquiesced in the ruling of the patent office, erased the rejected claims, and inserted a new one, which read as follows:

"A metallurgical furnace, having a heating chamber, a top outlet or stack, and air spaces in the side walls of the heating chamber contracted at the upper ends and communicating thereat with the said outlet, and the air inlets in the outer walls at the lower ends of the air spaces and alongside of the bottom of the chamber, substantially as set forth."

It will be seen that this claim limited the claim in the original application. It prescribed the form of the air spaces and the location and function of the air inlets. This application was rejected because the form of the air spaces "contracted at the upper ends and communicating thereat with the outlet" or stack had been shown in the British patent No. 1,448, granted May 26, 1865. Again the ruling of the patent office was accepted, and the specifications and claims amended and narrowed to the form in which we find them in the patent. It will be observed that in the patent as finally granted the patentee disclaims as new the jacketing of the heating chamber

with air spaces for the purpose of cooling. He abandoned the claim for his air spaces with contracted ends connecting with the stack, and claims nothing new except "the air spaces in the side walls extending above and below the floor line, with a series of cold air inlet ports opening through the outer side walls, and flues connecting the upper side of the air spaces with the interior of the furnace, whereby the draft will cause cold air to be drawn through the ports and impinge against the sides of the neck just below the floor." The novelty of Peifer's invention, without which he says the object sought cannot be effective, is the air spaces or ports located below the floor line of the furnace, and opening into an air chamber connected with a stack, thereby creating a draft which causes the cold air to be drawn through the ports and impinge against the side of the neck below the floor. To this specific device, we think, in view of the prior art, his claim must be limited. While the object of the defendant's device is to accomplish the same result as that attained by the complainant, the means which he employs are different. They are somewhat similar to those used in the Howatson patent, and which, like the patents cited by the commissioner of patents, would have been a bar to the granting of the broad claims of Peifer's original application. The air which is used for the cooling of the neck of the defendant's furnace is brought down through a flue opening at the top of the furnace, and descends in a current upon the neck from above, passes around to the bottom thereof in contact therewith, on, but not below, the floor line. After cooling the walls of the neck, the air passes through flues beneath the hearth of the furnace, and finally enters the fire chamber, where it aids the combustion of the fuel. We fail to find in the defendant's device any equivalent for the air ports or inlets through which the air can impinge in jets against the neck of the furnace below the floor line, in which consists the novelty of the complainant's device, and therefore are of the opinion that it does not infringe the claim of the complainant's patent in suit.

With regard to the allegation that the defendant actually used for a time the complainant's specific device, there is a serious conflict of testimony, which we have carefully examined. It is unnecessary for us to review it in detail, inasmuch as we have reached the same conclusion as the learned circuit judge, for the reasons which he has so clearly stated.

The decree of the circuit court should be affirmed.