HENRY HUBER CO. v. J. L. MOTT IRON WORKS.

(Circuit Court, S. D. New York. February 5, 1902.)

1. PATENTS—INFRINGEMENT—CONSTRUCTION OF CLAIMS.

A construction of the claims of a patent is not permissible which holds as an infringement a device which omits one of the elements of the combination, even if the remaining members accomplish a somewhat similar result.

2. SAME—BATH WATER HEATERS.

The Beaumont patent, No. 555,033, for an improvement in hot water bath fixtures, is not entitled to a broad construction of its claims or to a wide range of equivalents, in view of the prior art, and cannot be so construed as to cover every device having such an arrangement of valves that steam cannot be turned on without also turning on a stream of water to be heated. Claims 1, 2, and 6 construed, and *held* not infringed.

In Equity. Suit for infringement of patent. On final hearing.

Donald McLean and Walter S. Logan, for complainant.

W. P. Preble, Jr., for defendant.

COXE, District Judge. This is an equity suit, based upon letters patent No. 555,033, granted February 18, 1896, to the complainant as assignee of Thomas C. Beaumont, for improvements in hot water bath fixtures. The application was filed March 10, 1894.

The specification says:

"This invention relates to means for heating water for baths, showers, and other purposes where water is occasionally required to be heated, the invention being especially designed for those occasions where it is desirable to draw at will either hot or cold water through the same pipe. The water, in flowing to the faucet, shower or other outlet, passes through a water heating passage or pipe where it is exposed to the heat of steam contained in small pipes extended through said water pipes and constituting a steam passage, the steam being condensed by giving up its heat to the water in its flow through said passage. Hence if the steam is turned on along with the water the water issues hot, but if the steam is not turned on the water

flows cold. In such heating device it is important to provide means for preventing turning on steam without also turning on water, as by so doing steam would blow into the waste pipes and might scald the occupants of the building and have other disastrous results. The object of the present invention is to provide means for controlling the admission of water and steam, to the end that the steam cannot be turned on without also turning on water, while the flow of steam may be regulated independently of the flow of water to a greater or less extent and in order also that water may be turned on to draw cold water when desired."

In other words, the patentee has endeavored to prevent accidents to the bather by providing mechanism which permits the cold water to be turned on independently of hot water or steam, and prevents the steam from being turned on except in conjunction with the cold water. Neither live steam nor scalding water can, in ordinary circumstances, escape from the outlets.

The specification says, further:

"To these ends the improved apparatus has a compound valve for controlling the admission of water or steam to the water-heating and steam passages, consisting of a shell having steam and water passages through it, a pair of compression valves connected together and adapted to close the steam and water passages, respectively, and an independent compression valve adapted to close the steam passage only, so that steam can flow only when both valves are open, and cannot be turned on without thereby opening the water valve."

The claims which are said to be infringed are the first, second and sixth. They are as follows:

"(1) The combination with a water-outlet passage, of a compound valve for controlling the admission of water and steam thereto, consisting of a shell having two distinct inlet passages for water and steam, a pair of valves connected for simultaneous operation and adapted to close respectively the steam and water passages, and an independent valve adapted to close the steam passage, whereby steam can flow only when both valves are open, and cannot be turned on without also turning on a stream of water to be heated.

"(2) The combination with a water-outlet passage of a compound valve for controlling the admission of water and steam, consisting of a shell having two distinct steam and water inlet chambers and outlet seats therefrom, a valve stem and two valves carried thereby, the one closing the steam-outlet seat and the other the water-outlet seat, and an independent stem carrying a valve closing the steam-outlet seat, whereby the former stem controls the flow of water, and both control the flow of steam, so that the steam cannot be turned on without also turning on a stream of water to be heated."

"(6) The combination of a valve shell B formed with steam and water inlet chambers c and d, and outlet seats h and o therefrom, valves i and p closing against said seats respectively, a valve stem J carrying both said valves, and formed in two sections screwed together, with a valve p between them, and a valve i swiveled on the section q' by means of a coupling nut t' engaging the head t of this stem section."

The defenses are lack of utility and patentability and noninfringement.

The first claim is for a combination having the following elements: First. A water outlet passage. Second. A compound valve for controlling the admission of water and steam to the outlet. Third. The shell for the compound valve having two distinct inlet passages for water and steam. Fourth. The shell having also a pair of valves

connected for simultaneous operation and adapted to close the steam and water passages, respectively. Fifth. An independent valve adapted to close the steam passage.

The second claim is for substantially the same combination.

The sixth claim is restricted by the introduction of reference letters and is for a combination having the following elements: First. A valve shell B having steam and water inlet chambers c and d and outlet seats h and o therefrom, valves i and p closing against said seats, respectively. Second. A valve stem J carrying both said valves, and formed in two sections screwed together with a valve p between them. Third. A valve i swiveled on the section q' by means of a coupling-nut t' engaging the head t of this steam section.

It is doubtful if the sixth claim which omits the independent steam valve describes an operative combination for practical use. Without this valve there would be no adequate method of regulating the temperature. The outlet would always run hot or warm water. It would be impossible for the bather to take a cold bath as he could not turn on the cold water without turning on the steam at the same time.

But aside from this consideration it is obvious that the first two claims were intended to cover the invention as broadly as possible, the remaining claims being for subsidiary combinations and the precise mechanism described and shown. It would be an anomaly in patent law to construe the limited sixth claim as covering structures not embraced within the broad first claim.

The language of all of these claims is involved and obscure; they are difficult to comprehend and no effort has been made by the experts on either side to analyze or explain them. It is thought, however, that the foregoing analysis is substantially correct and that in order to infringe the respective claims the defendant's apparatus must contain the elements as stated or clearly defined equivalents therefor.

The theory of the complainant, apparently, is that the claims are infringed by any apparatus "whereby," to use the language of the claims, "steam can flow only when both valves are open, and cannot be turned on without also turning on a stream of water to be heated."

A sketch of the defendant's device is found at the end of complainant's proofs and a description of the apparatus is given by the patentee and by the defendant's expert, generally, in his direct, but more specifically in his cross-examination. The device contains two valves only, one a compression valve and the other a spring valve. The water is turned on before the steam is admitted. There is a prolongation of the stem of the water valve, which is about a quarter of an inch from a projection on the steam valve when the valves are closed. The water valve is, therefore, opened a quarter of an inch before the spring seated steam valve commences to open. When the closing action takes place the handle of the lever is turned and the steam valve is closed by the spring. By turning the handle still further the water can be shut off or it can be left to run after the steam has been shut off. The device is operated by a single

lever which controls the valves and induces them to open and close, but not synchronously. The valve spindle is made to swivel in two parts and passes through the partition in the valve shell separating the steam and water chambers. After opening the water valve the protruding stem pushes against the part connected with the steam valve and opens that.

As in the preferred form of the patented device the steam never comes in actual contact with the water. The steam is confined in small tubes inside a water column and thus communicates its heat to the water. There is no method by which the steam valve can be opened or closed independently of the water valve and as the latter is opened before the former the water flows through the system in advance of the steam. In a similar manner, when the lever is turned for closing, the steam ceases while the water continues to flow.

The defendant's apparatus has no independent valve adapted to close the steam passage, when it is desired to draw cold water only or vary the temperature of the water. This is admitted. Neither does it have the minutely described features of the sixth claim. There is no valve stem J made in two sections with the valve p between them, and several other parts therein described and claimed are also absent.

One of the defendant's witnesses testifies as follows:

"I do not know of the Beaumont apparatus ever having been used, made, offered for sale or illustrated; and I am conversant with the requirements of the trade and would be in a position to know if an article of this kind had been put on the market."

The complainant's expert testifies that the Beaumont apparatus is, in his judgment, "a practically successful machine," but the court has been unable to discover any testimony contradicting the above statement of defendant's witness, or tending to show that the patented structure was ever in practical use or achieved any commercial success. Assuming the presence of the inventive faculty, infringement must depend upon the scope given to the claims. "The range of equivalents depends upon the extent and nature of the invention." Miller v. Manufacturing Co., 151 U. S. 207, 14 Sup. Ct. 318, 38 L. Ed. 131.

The complainant insists that Beaumont is entitled to an exceedingly broad construction which will enable him to hold as infringers all who use devices which keep the cold water and steam separate and prevent the turning on of the latter without at the same time turning on the former to cool it. "Inventors," says the brief, "for decades had been leading up to this point. Many men had reached out towards it. Some, perhaps, had caught glimpses of the promised land, but it was left to Beaumont to be the first to enter it and to give to the world what it had been so long waiting for."

In order to ascertain how far this claim is justified it will be necessary to examine very briefly the prior art. Although many prior patents have been introduced in evidence by the defendant it will be necessary to examine two only, as it is conceded on all hands that they approach nearer to the Beaumont device than any of the

others. These are the patents to Tobey and Schaffstadt, dated respectively November 23, 1886, and April 15, 1890.

The Tobey patent is for a water heater, but it can be and actually has been used for bathing purposes. Indeed, the specification, after describing the defects of the prior structure, says:

"Thus, as often occurs, all the water in the cold-water tank may become heated and accidents happen by scalding, hot water being discharged from a supposed cold-water faucet. * * * The object of my invention is to overcome these objections. * * * My improved heater has the least possible amount of surface from which heat can radiate, and may be made to discharge either warm or hot water always at uniform temperature, and when the valve is properly set by lock nuts the receiver can never fill with steam."

The cold water is heated by contact with pipes filled with steam, the water and steam do not mingle and the steam cannot in ordinary conditions be turned on unless there is cold water in the chamber to be heated. The apparatus is so arranged that no matter how hot the steam may be the water as it comes from the faucet cannot exceed the desired temperature. It is true that Tobey accomplishes the desired result by different mechanism from that shown in the patent in suit. The steam and water valves are not connected together so as to be operated by the same handle, and there are, of course, many other differences of construction, but, on the other hand, the Tobey device has actually stood the test of use and seems to be a practical machine for heating water by steam pipes and conveying it to the bath at the desired temperature without danger to the bather, provided the machine is used with ordinary prudence.

The Schaffstadt patent is for an improved bath fixture "whereby the water is heated to any desired temperature by steam traveling through the pipes in an opposite direction to that in which the water is flowing without coming in contact with the water." The arrangement of the steam pipes is very similar to the arrangement in the Beaumont structure, the material differences being confined to the valve mechanism, the Schaffstadt apparatus having two independent valves for steam and water and Beaumont having the three valves heretofore described. In short, the Schaffstadt structure has all the features of the patented structure, except one, viz., the impossibility of the steam coming on before the water. If the drawing shows interfering handles there can be no doubt that means to prevent the primary flow of steam is mechanically provided, but whether this be so or not such handles were well known in the art and could easily be applied to the Schaffstadt valves. Certainly the natural way to operate these valves would be to turn on the water first. It would be a difficult task to turn on the steam first as the handles are so arranged that if the lever of the steam valve be first manipulated the action will almost inevitably push open the water lever also and the water lever will act in a similar manner if, in closing, it be first turned to the right. Other patents and exhibits show an endless variety of heaters, valves, faucets and cocks all designed to accomplish the same general object.

Ever since the bath tub has been an indispensable adjunct of civilized life the effort has been to enable the bather to take a cold or

warm bath, as he desired, and to do so with safety. The necessity of preventing steam or scalding water from escaping into the tub was manifest from the beginning and many devices have been adopted for this purpose. When it is realized that the tastes of bathers differ as to the temperature of the water and that the same person may desire a cold bath one day and a hot bath the next it will be seen how impossible it is to provide an absolutely automatic device under these changing conditions. Accordingly it appears that in all the structures shown in the record, including those of the complainant and defendant, something is left to the discretion and common sense of the bather. Unless he exercises ordinary prudence he may be chilled or scalded and this may happen with the complainant's apparatus and is much more likely to happen than with the defendant's apparatus. All of these devices proceed upon the theory that a person who knows enough to wash himself, even though a child, will also know enough not to plunge into boiling water or into ice water.

The court is unable to accept the complainant's theory that "Beaumont being first in the field is entitled to a broad construction of this patent." He was not the first. An army of inventors had preceded him and, assuming his apparatus to be an improvement upon the "Gegenstrom Bath" of Schaffstadt, it was only an improvement and nothing more.

It follows that the complainant is not entitled to a broad construction of the claims or a wide range of equivalents.

A construction is not permissible which holds as an infringement a device which omits one of the members of the combination, even if it be admitted that the remaining members accomplish a somewhat similar result. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; Sharp v. Riessner, 119 U. S. 631, 7 Sup. Ct. 417, 30 L. Ed. 507; Walk. Pat. § 349.

As before stated no attempt has been made upon the part of the complainant to analyze the claims or read them upon the defendant's apparatus. The charge of infringement is asserted generally and the expert is not asked to compare the defendant's device with the claims, but to "compare the valve system in the patent in suit with the valve system in the Mott apparatus."

The complainant's contention as to one of the elements, which is admittedly missing, may be fairly stated in the language of the brief as follows:

"We find in function and effect, if not in form, the independent valve mentioned in the first two claims. We find a valve doing the same thing in substantially the same way, though with a different form and of a different mechanical construction."

Comparing the defendant's apparatus with the first claim it will be found that it does not contain the compound valve described in the patent and the independent steam valve is entirely omitted. If it be urged that the spring-seated steam valve is the independent valve of the claim then the second (fourth) element is wanting, for there is then no "pair of valves connected for simultaneous operation." The two valves of the Mott device cannot be at the same time the

equivalent of the two connected valves of the claim and one of them be also the equivalent of the disconnected valve of the claim. In other words, a structure built in exact conformity with the patented device, except that the independent steam valve is omitted, cannot be held to have an equivalent for that valve.

But the defendant's apparatus does not have the compound valve of the claim. It has but two valves and these do not either open or close simultaneously. The steam valve is so located that it is impossible to operate it independently. The water valve must be opened before the steam valve and the steam valve must close before the water valve.

The same reasoning applies to the second claim and, assuming the sixth claim to be valid, to that claim also.

The court is constrained to hold that the defendant does not infringe. The bill is dismissed.