## CLAUDE NEON LIGHTS, Inc., v. E. MACHLETT & SON et al.

District Court, E. D. New York. June 12, 1929.

No. 2465.

Bohleber & Ledbetter, of New York City (Edwin J. Prindle, Thomas Ewing, and William Bohleber, all of New York City, of counsel), for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis, and Dean S. Edmonds, both of New York City, of counsel), for defendants.

CAMPBELL, District Judge. This is a motion for an injunction under a supplemental bill.

Patent No. 1,125,476 was held valid and infringed as to claim 1 by the Circuit Court of Appeals of this circuit, on the original appeal. 27 F.(2d) 702.

On a motion for a supplementary injunction after decree on mandate, on a button caesium electrode tube made by Rainbow Light, Inc., one of the defendants in the original suit, I made and filed an opinion on March 12, 1929 [(D. C.) 31 F.(2d) 989] in which I erroneously construed the opinion of the Court of Appeals of this circuit, on the original appeal.

A motion was subsequently made by the defendant Rainbow Light, Inc., before the Circuit Court of Appeals of this circuit, to recall and amend the mandate on the original appeal.

That motion was denied by the Circuit Court of Appeals [31 F.(2d) 991], and that court found that I had erroneously construed the opinion of that court on the original appeal.

It was also suggested that the question of the alleged infringement of the button caesium electrode tube could be determined on a supplemental bill being filed or a new suit commenced, and that in either case the question should be considered by this court on its merits.

No order or judgment was entered on the opinion of this court, filed March 12, 1929, and, as such opinion was clearly erroneous, it is withdrawn, and I will consider the questions raised on this motion on their merits.

Claim 1 of the patent in suit, No. 1,125,476, reads as follows:

"1. A luminescent tube containing previously purified neon and provided with internal electrodes for illuminating said gas, said electrodes being deprived of occluded gases and having an area exceeding 1.5 square decimeters per ampere, to decrease the vaporization of the electrodes and prevent the consequent formation upon the walls of the tube, in proximity to said electrodes, of deposits containing said gas, whereby the luminosity of the tube is maintained constant for a very considerable period of time without a fresh introduction of gas."

The electrode in the tube held to infringe in the original suit had an area of more than 1.5 square decimeters per ampere.

The electrode in the tube of which complaint is made in the supplemental bill has an area of .7 square decimeters per ampere, and there is also a caesium mirror in the tube.

The question involved in determining whether the defendant has infringed is whether the caesium in the tube is equivalent with electrode area.

Undoubtedly the patent in suit is entitled to a wide range of equivalents, but only to protect the invention, and I am convinced that it cannot be held that any and every combination that reduces depletion of neon gas by the spluttered film is an equivalent.

The contention of the plaintiff is that, inasmuch as the large area of the electrode of the patent in suit performs the function of increasing the life of the tube by reduction of the cathode drop, and the use of caesium with the electrode of small area in the tube, of which complaint is made in the supplemental bill, performs the function of increasing the life of the tube by reducing the cathode drop, the button electrode caesium type of tube is the equivalent of the tube of the patent in suit.

This contention the defendant denies, and on its part contends that the reduction of the cathode drop is a function, and that the means of accomplishing it is in one in-

stance the electrode of large area, and in the other the small electrode with the caesium mirror, and that the end or purpose is to obtain a tube of long life.

This brings us, first, to a consideration of what was the invention of the patent in suit.

The invention was of a system of illuminating by luminous tubes employing neon gas, and has the elements of (1) previously purified neon; (2) electrodes deprived of their occluded gases; (3) electrodes having a surface area in excess of 1.5 square decimeters per ampere to decrease vaporization.

Each of these elements is an essential element, fully described in the specification of the patent, and specifically enumerated as the elements of the combination of claim 1.

The defendant, in its process of the manufacture of the button caesium electrode type of tube as shown on the trial of the original action, which is its common practice, used previously purified neon as it was defined by the Circuit Court of Appeals on the appeal in the original suit, and the use of caesium vapor with the neon in defendant's button caesium type of tube is not in conflict with the teachings of the patent in suit or claim 1 thereof, with reference to the use of pure neon, as the patentee Claude in his French patent No. 434,190, referred to by him in the patent in suit as his patent of March 7, 1910, says, that gases given off during or after treatment may also be removed by proper reagents introduced into the tube to take up the impurities.

The defendant also in its process of manufacture of the button caesium type as aforesaid, which is its common practice, did deprive the electrode of its occluded gases.

The first two elements are found in defendant's said tube.

This leaves but one element for consideration, viz., electrodes having a surface area in excess of 1.5 square decimeters per ampere to decrease vaporization.

This element is not found in the defendant's button caesium type, of which complaint is here made; on the contrary, the area of the electrode is but .7 square decimeters per ampere, and infringement cannot be found, unless it be on the ground that the caesium mirror employed in such tubes is the equivalent of the electrode area.

The patentee did not discover, nor was he the first to teach, that spluttering could be reduced through lowering of the cathode drop; on the contrary, this was well known to the art before Claude made his invention.

Claude did not claim as an element of his combination the lowering of the cathode drop, but did claim as a means for lowering or reducing the cathode drop electrodes having a surface area in excess of the critical area of 1.5 square decimeters per ampere.

In fact, there are but two references to the cathode drop in the patent in suit, and both occur in the specification.

The benefits, and even the necessity, of the electrodes having the area described, appears in the testimony of the plaintiff's witnesses on the original trial, and is fully set forth in the specification of the patent in suit, and Claude's rule of relationship between current and electrode area is not specifically disclosed in any prior patent or publication.

Claude was seeking a long-life tube, and he clearly shows that it can be obtained by making the electrodes of a size larger than the critical area in combination with the other two elements specified, previously purified neon and depriving the electrodes of their occluded gases. He does not even suggest that the result may be obtained in any other way.

The correctness of the Claude rule is not challenged by the defendant's button caesium electrode type, because it is clear that the small electrode without the caesium mirror would be destroyed by spluttering, and it is only by the introduction of a new element, the caesium, that defendant is enabled to obtain long life for its tube.

The lowering of the cathode drop is a function, and an electrode having an excess of the critical area is the means employed by Claude in the patent in suit; therefore the plaintiff, in contending that caesium in defendant's tube is equivalent with electrode area because the small electrode with the caesium mirror lowers the cathode drop, is claiming a patent on the function and not on the means, and function is not patentable. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136.

The patentee's monopoly is restricted to that which he has claimed and described (Fulton Co. v. Powers Regulator Co. [C. C. A.] 263 F. 578), and the description and claim of the patent in suit are both strictly limited to "electrodes * * * having an area exceeding 1.5 square decimeters per ampere," and no other means is even suggested in the patent in suit.

The claim is explicit, and the plaintiff's rights are limited by the claim. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274,

24 L. Ed. 344; Lehigh Valley Railroad Co. v. Mellon, 104 U. S. 112, 118 (26 L. Ed. 639); McClain v. Ortmayer, 141 U. S. 419, 423, 424, 12 S. Ct. 76 (35 L. Ed. 800).

Plaintiff cites, as opposed to such limitations, McCormick Harvesting Mach. Co. v. Aultman, Miller & Co. (C. C. A.) 69 F. 371, 373; Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279; Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co. (C. C. A.) 61 F. 958; Devlin v. Paynter (C. C. A.) 64 F. 398; United Nickel Co. v. Pendleton (C. C.) 15 F. 739; but these cases are not in point.

When a claim is clear and distinct, a patentee may not go beyond the words of his contract for the purpose of establishing infringement, and the range of equivalents must be measured by what is both described and claimed. Homer Brooke Glass Co. v. Hartford-Fairmont Co. (C. C. A.) 262 F. 427, 429, 430.

By the use of a large electrode as taught by Claude, the current density is lowered and the lowering of the current density is accompanied by a reduction of the cathode drop.

By the use of the small electrodes and caesium, the defendant takes advantage of the fact that electrical conduction, from the mixture of caesium vapor and neon near the cathode to the cathode, is accomplished with greater ease and smaller loss of potential (cathode drop) than from pure neon to the cathode.

There is no evidence to show that the caesium mirror is an electrode or functions in the same way as an electrode. The fact is that the caesium mirror is not in electrical contact with the button electrode during the normal operation of the tube.

An equivalent is an element which performs substantially the same function or office in substantially the same way to obtain substantially the same result, and it seems to require only a statement of the means employed by Claude and the defendants to show that the element claimed by the plaintiff to be an equivalent does not perform the same function or office in substantially the same way.

In the Claude patent, the reduction of the cathode drop is accomplished by making the electrodes larger.

In the defendant's button caesium tube with small electrodes, the reduction of the cathode drop is accomplished by the mixture of neon and caesium, and not by large electrode area.

The defendant, disregarding Claude's teaching of the necessity of electrodes of large area, has taken the small electrodes of the prior art, and, by the addition of caesium, a new element accomplished the result of a long-life tube.

The button caesium electrode tube of the defendant does not infringe.

The motion is denied.