SHARP v. BELLINGER et al.

(Circuit Court, N. D. New York. March 5, 1909.)

No. 7,159.

1. PATENTS (§ 165*)—CONSTRUCTION—LIMITATION BY LANGUAGE OF CLAIMS.
    Courts will go far to save a patent for a meritorious invention, but they cannot reconstruct claims and disregard their very terms, and add or substitute material words not found therein, but necessary if the true invention is to be covered.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 241; Dec. Dig. § 165.*]

2. PATENTS (§ 174*)—CONSTRUCTION—IMPROVEMENT PATENT.
    When the invention of a patent is not a pioneer invention, the inventor is held to a rigid construction of his claims, and is not entitled to any considerable range of equivalents; and when, in a patent for a mere im-

provement, which in view of the prior art is extremely narrow, he has limited his claims by specific words to a specific form of device or element, he is bound thereby.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 249; Dec. Dig. § 174.*]

3. PATENTS (§ 328*)—INVENTION AND INFRINGEMENT—FIRE-ESCAPE.

The Sharp patent No. 835,985, for a fire-escape, consisting of a stationary frame carrying a reel upon which is wound a cable by means of which a person may lower himself to the ground, the movement of the cable being controlled by brake-shoes, discloses patentable invention in the manner and means of applying the brake-shoes, but is only for an improvement, and the claims must be limited according to the precise means shown and described. As so construed, the patent is not infringed by the device of the Davy patent No. 818,526.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. Suit to restrain alleged infringement of United States letters patent and for an accounting.

See, also, 155 Fed. 139.

Franklin H. Hough and Charles J. Williamson, for complainant.
Robinson, Martin & Jones, for defendants.

RAY, District Judge. The complainant alleges infringement by the defendants of claims 1 and 7 of United States letters patent No. 835,-985, dated November 13, 1906, and issued to Judson C. Sharp, the complainant, for fire-escape, on application filed July 13, 1904.

The claims in issue read as follows:

"(1) A fire-escape comprising a frame, a shaft carried thereby, a spring-actuated reel journaled upon the shaft, a cable secured to and winding about the reel, a fixed ring positioned about said shaft, semicircular brake-shoes having corresponding ends recessed, the bottoms of said recesses being inclined, a lever having inclined portions engaging said recesses, a centrifugally-movable weighted member, and means intermediate the same and said reel whereby said member may be rotated and thrown against said lever for the purpose of expanding the brake-shoes against said ring, as set forth. * * *

"(7) A fire-escape comprising a frame, a shaft carried thereby, a reel journaled upon said shaft, a cable around said reel, a stationary ring about said shaft, a centrifugally-movable weighted member, semicircular brake-shoes with slotted ends, a lever adapted to engage the slotted ends of said shoes to expand the same, a rotatable collar, gear connections between the same and said reel, and means carried by said weighted member for contact with said lever, whereby the brake-shoes may be expanded as the latter are rotated, as set forth."

The elements of claim 1 are (1) a frame, (2) a shaft carried thereby, (3) a spring-actuated reel journaled upon the shaft, (4) a cable secured to and winding about the reel, (5) a fixed ring positioned about said shaft, (6) semicircular brake-shoes having corresponding ends recessed, the bottom of said recesses being inclined, (7) a lever having inclined portions which engage the recesses and conform to the shape thereof, (8) a centrifugally-movable weighted member, and (9) means intermediate the weighted member and the reel whereby the weighted member may be rotated and pressed against the lever for the purpose of expanding the brake-shoes and pressing them against the fixed ring positioned about the shaft.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Claim 7 calls for a frame, a shaft carried thereby, a reel journaled upon the shaft but not for a spring-actuated reel, a cable around said reel but not a cable secured to and winding about the reel, a ring about the shaft, a centrifugally-weighted member, semicircular brake-shoes with slotted ends instead of semicircular brake-shoes having corresponding ends recessed, a lever adapted to engage the slotted ends of said shoes to expand the same, instead of a lever having inclined portions engaging the recesses, also a rotatable collar and gear connections between the collar and the reel, and also means carried by the weighted member for making contact with the lever so that the action of the lever upon the brake-shoes when actuated by the weighted member will expand the brake-shoes as they are rotated. .

The cable secured to a reel and winding about it may be quite different from a cable around a reel. A reel journaled upon a shaft is different from a spring-actuated reel journaled upon a shaft.

Turning to the specifications, I fail to find anything which indicates that Sharp had in mind any reel other than the spring-actuated reel. A spring-actuated reel is what he describes, and he speaks more than once of the winding and unwinding thereof and of the rewinding of the cable on the reel.

The operation of this device is substantially as follows: The frame may be attached to the walls of a room. One end of the cable is attached to the reel, and the cable is wound up thereon. The free end of the cable has means for attachment to the body of a person who may get outside the building and let himself down towards the ground without other support than the cable and the friction created by the contact of the brake-shoes with the fixed ring positioned about the shaft. As the person begins to descend, the cable is unwound from the reel, which rapidly revolves and sets in motion gearing which causes the weighted member to rapidly revolve, and the rapid motion tends to throw the weight away from the center, and this brings a flange of the weighted member against the end of the lever not engaged with the semicircular brake-shoes, and the pressure upon the lever engaged at the other end with the brake-shoes in the manner described pries the ends of the brake-shoes apart, one in one direction and the other in the opposite direction, against the inner surface of the fixed ring positioned about the shaft, creating thereby friction of the brake-shoes in contact with the ring, which retards the revolution of the reel weight and brake-shoes and correspondingly retards or controls the descent of the person attached to the free end of the cable. The device is operative and useful, and is an improvement upon any device of the kind of the prior art shown in the proofs. There is improvement in the general construction of this device and in the arrangement of the parts. There is a new mode of operation in one respect, viz., the manner of expanding the brake-shoes and the means for doing it. Otherwise the device is old and devoid of novelty. I think, on the whole, patentable invention is disclosed, and so hold. As Sharp was an improver in this field of invention and not a pioneer, his claims must be limited accordingly.

March 11, 1902, Sharp took out letters patent No. 695,001, for fire-

escape, which, so far as I can see, were, except in arrangement and mere change in form of parts, with some added details of construction, a duplication of the prior art. But this is not material in the aspect of the case now being considered. That device was not compact. In the specifications of the patent in suit Sharp says:

"This invention relates to new and useful improvements in fire-escapes; and the object of the invention is to generally improve upon and render more efficient and simple this class of inventions, and in the present invention it has been my aim to improve upon my invention covered by letters patent in the United States, No. 695,001."

In making his alleged improvements he introduced no new element whatever. Taking them one by one, we find the frame in several prior patents; also the shaft carried thereby; the reel journaled upon the shaft, and a cable secured to the reel and winding about it, in Johnson, No. 286,306, of October 9, 1883; the same, spring-actuated, in Hill, No. 388,491, of August 28, 1888; and a cord or rope or cable simply passing over a drum or reel, but not winding up thereon, is shown in Tapley, No. 139,484, of January 3, 1873. A fixed ring positioned about the shaft and semicircular brake-shoes and levers engaging the brake-shoes and centrifugally-movable weighted members and means for rotating the said member, and throwing or pressing it against the lever so as to actuate it and thereby press the brake-shoes against the fixed ring, are shown in the following: Tapley, No. 139,484, which has the ring and the weights so shaped that they act as a brake-shoe; Johnson, No. 286,306, of October, 1883, which has weights and semicircular brake-shoes which are pressed by the weights against a flange or device in the reel; in Hill, No. 388,491, of August, 1888, which has a frame; a winding drum, spring-actuated, with cord or cable wound thereon, a fixed ring positioned about a shaft, semicircular brake-shoes, levers actuated by centrifugally and movable weighted members so as to press the brakes against the fixed ring when the device is in motion, and means intermediate the weighted member and the reel whereby said member may be rotated and pressed against the said levers at one end so as to press the other end thereof against the brake-shoes and press them against the fixed ring and thereby produce the friction. In Hill, the weighted member with weights, levers, etc., is constructed as follows:

"a indicates a spider fixed to the shaft, Y, and rotating within the flange-disk, Z. This spider carries upon it two sets of pivoted levers, b, c, which are exactly alike and are placed opposite each other on the spider. The lever, c, is provided with a brake-shoe, d, and with a spring, e, seated upon a lug, f, projecting from the spider and bearing radially outward against the lever, c, and always tending to keep the brake-shoe out of contact with the flange, g. The long arm of the lever, b, is weighted at h, so that when the spider is rotated centrifugal force tends to throw it outward tangentially, the effect of which is to instantly force the brake-shoe against the inner surface of the flange, g. These parts are so adjusted that as soon as the rotation of the winding-drum reaches a certain moderate degree of rapidity at which it will be desirable to check the speed of lowering, the brake-shoes will then instantly be forced against the inner surface of the flange, g, which checks the speed and secures perfect safety lowering."

Here the weighted arm or lever, b, has prongs at the end where it engages with the end of lever, c, which is recessed to permit such en-

gagement. When the inner end of b, is thrown outwardly, the other end moves inwardly towards the center or shaft, and, by reason of the said engagement of one end of b with C, this end of C is also carried inwardly, and the other end, provided with a brake-shoe, is thrown outwardly, and the shoe is pressed against the fixed ring or "flange-disk, Z." Regarding c and d as one whole and as constituting the brake-shoe, it has one end recessed, and lever, b, has teeth or projections fitting therein so as to actuate both c and d at the same time. It is readily seen that the brake-shoes of Hill differ from those of the patent in suit, as do the connections between same and the lever moved by the weighted lever. The mode of operation is somewhat different. But turning to Mignot, No. 639,751, of December 26, 1899, fire-escape, we find a circular fixed ring positioned about the shaft with a circular brake-shoe therein and fitting the interior of the ring. This shoe is divided but not recessed. We have a lever weighted at one end and slotted so as to be movable lengthwise. This connects with another curved lever, running at right angles to the first-mentioned lever, the outer ends of which enter between the divided ends of the circular brake-shoes. This second lever is pivoted at a little distance from the divided ends of the shoe, and recessed or notched so as to engage these free ends of the divided brake-shoe. When the weighted end of the first lever moves outwardly it draws one end of the second lever inwardly, and throws one side of the other end sidewise against one free end of the divided brake-shoe, and pulls the other side of such second lever, at a point inside its pivot, against the other free end of such brake-shoe, and the consequence is that the circular brake-shoe is pressed against the interior surface of the fixed ring so as to create the required friction. Here we have substantially the same mode of operation in applying the brake-shoes as in the patent in suit. It is unnecessary to describe Porter, No. 715,691, of December, 1902, which shows a brake-shoe and some details of construction quite similar to those of complainant's device.

The construction and operation of complainant's braking apparatus is thus described:

"A pinion-wheel, O, is loosely journaled upon the shaft, and is in mesh with the pinion-wheel, J, whereby, as the arm, K, of said collar is swung about the shaft and carrying with it the rotating wheel, J, a rotary movement will be imparted to said pinion-wheel, O, which operates the governor mechanism.

"Fixed to the arms of the section, B', of the frame is a ring, I, with a flange, I', at one edge thereof, and MM designate two frictional shoes which are of semicircular shape and are adapted to be expanded against the inner circumference of said ring in order to afford a frictional brake to the apparatus. Corresponding ends of said shoes are notched, as at M', and are adapted to receive one end of an arm, O', which projects from the hub portion of the pinion-wheel, O, as shown clearly in Fig. 1 of the drawings. The opposite ends of said friction brake-shoes, M, have recesses, m, the bottom walls of said recesses being inclined and tapering inward toward each other. Said slotted ends of the brake-shoes are spaced apart slightly, and a brake-throwing lever, Q, having a curved shank portion, is provided, one end of which has a triangular-shaped end, the opposite inclined edges of which are adapted to engage with the inclined bottoms of said slots as the lever is tilted, whereby said shoes may be thrown in opposite directions frictionally against the inner circumference of said ring to regulate the movement of the reel in unwinding.

"A plate, R, is provided, one end of which, R', is weighted and projects over

the circumference of said ring and is longitudinally slotted, as at R2, the walls of said slot having a play in the oppositely-disposed parallel recesses, O2, formed in the hub portion of the pinion-wheel, O. By the provision of said plate having a weighted end it will be observed that as the pinion-wheel, O, is rotated said plate will be given a rotary movement, and the faster the pinion rotates the greater the tendency of the weighted plate to be thrown outward by centrifugal force. A projection, R3, upon one face of the plate, R, is adapted to contact and bear against the outer end of the shoe-throwing lever as the plate rotates, and it will be readily understood that the faster the plate rotates the greater the centrifugal force will be upon said plate, and the greater will be the pressure which is applied to said shoe-throwing lever for the purpose of expanding the friction brake-shoes, causing the same to brake and reduce the speed of the rotating parts."

I think it obvious that the only material change from the prior art is found in the engagement of the lever device with the ends of the brake-shoes for the purpose of expanding them, and the form of lever used. It is an improvement on the prior art for the reason the engagement is much more secure, less liable to displacement, and a much better and greater pressure is exerted on the brake-shoes.

It is claimed that defendants have infringed by making or selling or using this precise device; also by making, using, and selling another device, or fire-escape, which is a duplicate of complainant's fire-escape except in the particulars of the engagement of the lever device with the brake-shoes and the form of lever employed, and the connection of the cord or cable with the reel and its operation. This last-mentioned fire-escape is covered by United States letters patent No. 818,526, dated April 24, 1906, and granted to defendant Charles F. Davy, for fire-escape. The material parts of the Davy device is described in his specifications as follows:

"Secured in the frame and encircling the shaft, 2, there is also provided a stationary friction-ring, 7, which ring receives semicircular expandible friction-shoes, 8, 8. At adjacent ends these friction-shoes, 8, are provided with a notch or recess, 8a, which receives the outer end of an arm, 4a, provided on and integral with the pinion, 4, on the shaft, 2, so that when the pinion, 4, is rotated around the shaft, 2, the shoes, 8, will be caused to move in a circle around the shaft, 2, within the friction-ring, 7. In the sides of the pinion, 4, and including in part the arm, 4a, there are provided grooves which receive the thinner portion of the actuating-weight, 9, which weight has a plate-like portion slotted, as indicated at 9a, to receive that portion of the pinion, 4, which lies between the aforesaid grooves. By this arrangement the weight is mounted on the pinion, 4, and is free to have a radial movement with reference thereto. It may be noted that the main portion of the weight is in the head, 9b, thereof, which is the effective part so far as weight is concerned. The plate-like portion of the weight, 9, also serves to support the shoes, 8, in their position within the friction-ring, 7, or rather prevent displacement from the friction-ring toward the middle of the machine. The weight, 9, is connected with the friction-shoes, 8, by means of the toggle-joint levers, 11 and 12. These levers at their outer ends are provided with substantial cylindrical heads, 11a and 12a, respectively, which heads are respectively adapted to engage in a suitable recess, 8b, provided in the friction-shoes, 8. The engaging ends of the toggle-joint levers, 11 and 12, are also provided with cylindrical heads, 11b and 12b, respectively, which are halved together, as shown, and provided with a pin, 13, which prevents relative displacement. The inner ends of the toggle-joint levers, 11 and 12, are received between projections, 14 and 15, on the weight, 9, the upper ends of which projections are preferably hooked inwardly, so as to retain the toggle-joint levers in position against lateral displacement. These toggle-joint levers are also preferably made crooked, as shown, whereby their length can be readily adjusted by

straightening them or bending them more, as occasion requires. The projection, 15, also preferably includes a projecting portion, 15b, adapted to strike the friction-shoes, 8, and prevent the outward movement of the weight, 9, to such an extent as to pass the toggle-joint levers by the dead-center or even allow them to come so close to a straight line as to not open with facility when the pressure thereon of the weight is relieved."

To read the two descriptions, on account of differences in phraseology and the use of different names in describing the same things, we would naturally fall into some confusion, and might be led to suppose that there is considerable difference in the two devices; but with them before us—and both are in evidence—we see that the two are identical, until we come to the form of the ends of the shoes and the lever and lever connections. Says Sharp:

"Corresponding ends of said shoes are notched, as at M', and are adapted to receive one end of an arm, O', which projects from the hub portion of the pinion-wheel, O, as shown clearly in Fig. 1 of the drawings. The opposite ends of said friction brake-shoes, M, have recesses, m, the bottom walls of said recesses being inclined and tapering inward toward each other. Said slotted ends of the brake-shoes are spaced apart slightly, and a brake-throwing lever, Q, having a curved shank portion, is provided, one end of which has a triangular-shaped end, the opposite-inclined edges of which are adapted to engage with the inclined bottoms of said slots as the lever is tilted, whereby said shoes may be thrown in opposite directions frictionally against the inner circumference of said ring to regulate the movement of the reel in unwinding."

It is with the "opposite ends of said friction brake-shoes" and their formation and the "brake-throwing lever" and its engagement with the ends of the shoes alone that we are now dealing. The function of the inserted end of the lever is to pry the ends of the brake-shoes apart. In the Davy patent this formation of these "opposite ends of said friction brake-shoes" is abandoned. The described "brake-throwing lever, Q," above described, is also abandoned. In place of the recessed ends, we have plain square ends for the friction brake-shoes, and, in place of such recesses at the ends thereof as are described, we have recesses at some little distance from such ends, 8b, adapted to receive the respective cylindrical heads of a toggle-joint lever presently to be described. These recesses of Davy are of different shape from those of Sharp. In place of the "brake-throwing lever" we have, actuated by the weighted member, "the toggle-joint levers, 11 and 12. These levers at their outer ends are provided with substantially cylindrical heads, 11a and 12a, respectively, which heads are respectively adapted to engage in a suitable recess, 8b" (above mentioned), "provided in the friction-shoes, 8." As these toggle levers are interlocked and both pressed upon at their inner ends, where they join, at the same time and by the same means, they are actuated at the same moment, act in unison, and as one lever, and the cylindrical heads engaged in the recesses, 8b, press the ends of the friction brake-shoes further apart, expand them, and consequently press the brake-shoes against the fixed ring positioned about the shaft. The function of the toggle lever is precisely that of the lever in complainant's device, and it operates in substantially the same way to produce substantially the same result. The change of levers and points of engagement with the

brake-shoes produces no new or improved result, no different or better mode of operation in the brake-shoes. It is clearly the substitution of well-known equivalents. The questions are: (1) Is the complainant's invention of such a character that he is entitled to the benefit of the doctrine of equivalents, and (2) has the complainant so limited himself by the wording of his claims that he is limited to the particular lever and brake-shoes described therein and in his specifications?

Claim 1 says, "semicircular brake-shoes having corresponding ends recessed, the bottoms of said recesses being inclined, a lever having inclined portions engaging said recesses." Claim 7 says, "semicircular brake-shoes with slotted ends, a lever adapted to engage the slotted ends of said shoes to expand the same." The specifications say, "the opposite ends of said friction brake-shoes, M, have recesses, m, the bottom walls of said recesses being inclined and tapering inward toward each other," and, as to the lever, "a brake-throwing lever, Q, having a curved shank portion, * * * one end of which has a triangular-shaped end, the opposite-inclined edges of which are adapted to engage with the inclined bottoms of said slots as the lever is tilted."

It is well settled that the inventor of a meritorious device having patentable novelty and disclosing mental conception of a high order may so limit himself by the words of his claim or claims as to deprive himself of the benefits of his labor and skill. So the Patent Office may impose limitations which, if acquiesced in, will deprive the claimant of that which he is really entitled to. Courts will go far, however, to save a patentee having a meritorious invention (Benbow-Brammer Mfg. Co. v. Straus [C. C.] 158 Fed. 627, affirmed by the Circuit Court of Appeals December, 1908, 166 Fed. 114), but they cannot reconstruct claims and disregard their very terms, and add or substitute material words not found therein, but necessary if the true invention is to be covered. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 278, 24 L. Ed. 344; Universal Brush Co. v. Sonn et al., 83 C. C. A. 422, 154 Fed. 665, 668; Wagner T. Co. v. Wyckoff S. & B., 151 Fed. 585, 81 C. C. A. 129.

In Keystone, etc., v. Phœnix Iron Co., supra, the court said:

"They (the patentees) cannot expect the courts to wade through the history of the art, and spell out what they might have claimed but have not claimed. * * * But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the Patent Office. * * * As patents are procured ex parte, the public is not bound by them, but the patentees are. And the latter cannot show that their invention is broader than the terms of their claim, or, if broader, they must be held to have surrendered the surplus to the public."

There is a difference however, between primary inventions and mere improvements. In Wagner T. Co. v. Wyckoff S. & B., supra, the court, per Coxe, C. J., said:

"Courts look with favor upon patents for primary improvements which are novel and a manifest departure from the principles of prior structures, and which constitute the final step necessary to convert failure into success. * * * A strict construction of the claims of a patent should not be resorted to, if the result would be a limitation on the actual invention, unless it is required by the language of the claim. * * * Infringement is not avoid-

ed by changes in a patented machine which are nonessential, as by changing the positions of parts, or transferring a function from one part to another, without affecting the principle or mode of operation."

Neither Sharp nor Davy has substantially departed from the prior art (prior to Sharp), except in the matter of the lever and its manner of connecting or interlocking with the brake-shoes. Sharp described with great particularity and definiteness a specific form of lever and a specific form of interlocking with the shoes. He gave a specific form to the end of the lever and to the very ends of the brake-shoes. Here in these specific forms his improvement showing patentable novelty resided. Defendant Davy does not use them, and for this reason he has not appropriated the new and novel means or idea of Sharp. A strict construction of a claim should not be resorted to if the result would be a limitation of the actual invention, unless such strict construction is required by the language of the claim itself. Wagner T. Co. v. Wyckoff, 151 Fed. 585, 591, 81 C. C. A. 129, citing and approving Smead Co. v. Fuller & Warren Co., 57 Fed. 626, 6 C. C. A. 481.

But "when an invention is not a pioneer invention, the inventor is held to a rigid construction of his claims" (Wright v. Yuengling, 155 U. S. 47, 15 Sup. Ct. 1, 39 L. Ed. 64), and is not entitled to any considerable range of equivalents (Kokomo Fence Machine Case, 189 U. S. 8, 23 Sup. Ct. 521, 47 L. Ed. 689; Cimiotti, etc., v. American F. R. Co., 198 U. S. 399, 25 Sup. Ct. 697, 49 L. Ed. 1100; Computing Scale Co. v. Automatic, etc., 204 U. S. 609, 27 Sup. Ct. 307, 51 L. Ed. 645), but still the range of equivalents depends upon the extent and nature of the invention (Paper Bag Patent Case, 210 U. S. 405, 28 Sup. Ct. 748, 52 L. Ed. 1122; Miller v. Eagle M. Co., 151 U. S. 207, 14 Sup. Ct. 310, 38 L. Ed. 121). And when, in a patent for a mere improvement which, in view of the prior art, is extremely narrow, the patentee has limited his claims by specific words to a specific form of device or element, he is bound thereby. Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263; McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 35 L. Ed. 800; Burns v. Meyer, 100 U. S. 671, 672, 25 L. Ed. 738; Keystone Bridge Co. v. Phœnix, etc., 95 U. S. 274, 278, 24 L. Ed. 344.

In McClain v. Ortmayer, supra, the court said (page 425 of 141 U. S., page 78 of 12 Sup. Ct. [35 L. Ed. 800]):

"But if the language of the specification and claim show clearly what he desired to secure as a monopoly, nothing can be held to be an infringement which does not fall within the terms the patentee has himself chosen to express his invention."

In this case, the patent to Sharp, in issue, is an improvement merely, of narrow scope, entitled to but a limited range of equivalents, and his claims are further narrowed and limited by the specific language used and specific lever and brake-shoes described therein. Then the Patent Office itself has recognized a patentable difference in the two structures or machines by granting a patent to Davy. This is not conclusive, but raises a presumption that there is a patentable difference.

In view of these considerations, I cannot find that defendants infringe by making or selling, or offering for sale or using, the Davy fire-escape as modified in respect to the toggle-joint lever, conceding the stipulation shows they have done either of these acts. I find no proof whatever that defendants, or either of them, have made, sold, offered for sale, or used one or more fire-escapes made according to or like the Sharp patent in suit.

Taking this view of the case, it is unnecessary to consider the other defense urged.

There will be a decree dismissing the bill, with costs.