**PARKINSON HEATING CORPORATION et al. v. GOLDENSTEIN.**

No. 466.

Circuit Court of Appeals, Second Circuit.

Aug. 2, 1937.

Keppler & Keppler, of New York City, for defendant-appellant.

Murray H. Marker, of New York City (Stockbridge & Borst, George T. Gill, and Henry Ward Beer, all of New York City, of counsel), for complainants-appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a final decree in favor of the complainants in a suit by them for infringement by the defendant of United States patent No. 1,834,070. The invention is for water heating coils to supply hot water for domestic uses. It is adapted for use in systems where no separate tank for storing hot water is employed.

The method of obtaining a hot water supply for domestic use in apartments has generally been to install a tank above the level of a heater and to introduce cold water into the bottom of the tank which is connected with the heater. The heater is also connected with the top of the tank. As the water in the heater becomes hot it rises to the top of the tank and is replaced in the heater by water from the bottom of the tank. There is thus a continuous circulation of the water from the bottom of the tank to the heater wherein the water is heated and thence to the top of the tank. The hot water is drawn in separate pipes from the top of the tank for domestic use.

To avoid the necessity of a large tank for storing hot water and also to save fuel Parkinson devised the water heater described in United States patent No. 1,834,-070 which the District Court has held valid and infringed. He provided a heating device or coil having a large surface area which was to be entirely submerged in the heated water of a boiler without any part protruding above the water level and thereby receiving too great heat as from the steam. To secure the increased heating surface, he designed inlet and outlet passages of different sizes so that the inlet passage was of large diameter or cross-sectional area, and the outlet passages (there being a plurality of them) were small, but their combined or total surface area was greater than that of the large passage. Parkinson thus employed for the purpose of heating his coils the same boilers that were already in use in buildings for other purposes and secured the advantage of obtaining hot water with little more fuel than was already required to make steam for the buildings and without the necessity of installing a storage tank. The complainants, who control the patent, have made two types of heaters one known as the P-type which has a single inlet tube of 1½ inches in diameter extending between the first and rear headers and eighteen outlet tubes of five-eighths of an inch. The other is known as the M-type, which has eleven inlet tubes of five-eighths of an inch in diameter and eleven outlet tubes of the same character. The defendant has made and sold a heater for insertion in a boiler that was similar in many respects to the Parkinson M-type. It has fifteen inlet and fifteen outlet five-eighth-inch tubes extending perpendicularly to the header but employs "u" bends instead of a rear header like that of Parkinson.

Complainants rely on claims 4 and 6 which the court below held valid and infringed by defendant's heater. They read as follows:

"4. A water heating device adapted to extend through an opening in a boiler and be submerged in the heated water therein, and comprising inlet and outlet passages grouped to form a relatively flat and wide unit adapted to be mounted in an opening of the boiler and to occupy a shallow space in heated water of the boiler."

"6. A water heating device adapted to extend through an opening in a boiler and be submerged in the heated water therein, and comprising a horizontally elongated header having an inlet chamber at one end and an outlet chamber at the other end thereof, a large passage leading from said inlet chamber, and small passages leading from said large passage to said outlet chamber, the total heat exchange surface area of said small passages being greater than that of the large passage."

The broad claim No. 4 is completely anticipated by the British patent No. 8471 (A.D.1911) to Lewis Marshall. The specification in that patent states that:

"This invention relates to boilers such as are provided with appliances for heating water that does not circulate through the boiler but is obtained from an independent

source, the water so obtained and heated being primarily intended to serve as a hot water supply for domestic purposes.

"According to this invention the water heating appliance comprises 'a battery' of tubes projecting from a casing that is fixed to the boiler and is separated into compartments in such a manner that water supplied to one compartment passes along the tubes in which it becomes heated, to another compartment from which the heated water issues or may be drawn off according to requirements."

As shown in Figures 4 and 5 Marshall's heater comprises a heater divided by a partition into two compartments each having a pipe connection. The cold water supply pipe is attached to one of these connections. From this inlet compartment the cold water flows through a plurality of U tubes which extend into the boiler and are submerged in the water as shown in Figure 5. The other ends of these tubes connect with the outlet compartment "from which the heated water issues or may be drawn off according to requirements." It is argued that the Marshall patent was not intended for a tankless system. We see no basis for this other than general statements that tankless systems were unknown in 1911, but even if such were the case, the Marshall heater was as well fitted for a tankless system as one built under the broad claim No. 4 of the patent in suit such as the M-type which the complainants are selling. There is no reason why either the Parkinson or the Marshall devices should not be used with or without a tank. Moreover, the Marshall specification which provides that the heated water may be "drawn off" from the outlet compartment "according to requirements" clearly makes his device applicable to a tankless system. Even though Marshall had in mind the use of his heater in connection with a hot water storage tank his patent was only for the "appliance" described and shown and a new use of an old device would not be patentable.

Figure 3 of the Marshall patent shows nine inlet and nine outlet tubes, thus furnishing a very substantial heating surface comparable with defendant's heating unit with fifteen inlet and fifteen outlet tubes.

The complainants' criticisms of the Marshall patent are without foundation. There is no reason to suppose that, as the court found, it related to any special type of boiler. Nor is the objection good that mounting the coil in the flue chamber would result in an inoperative device because the water would be turned to steam for the installation shown in Fig. 5, which we have already referred to, shows the coil submerged in the water of the boiler. There is likewise no basis for the claim that the coil was to be mounted in the steam chamber. The illustration is quite to the contrary. The further objection that the coil disclosed is not a unit is quite contrary to the plain disclosure of the patent as is the objection that Marshall's coil is not "relatively flat and wide."

We think it clear that claim 4 is invalid because of the earlier Marshall patent.

Claim 6 calls for a large passage leading from the inlet chamber and small passages leading from the large passage to the outlet chamber "the total heat exchange surface area of said small passages being greater than that of the large passage." It is necessary wholly to rewrite this claim if defendant's heater having no large passage but a plurality of small inlet and outlet tubes is to be regarded as infringing. It must be borne in mind that such a heater as Parkinson describes in claim 6 is at best only an improvement in the art. United States patent No. 996,657 to McGregor granted July 4, 1911, shows two tubes forming a heating coil and inserted in the boiler. The theory of operation was in general the same as that of the patent in suit the difference being that the tubes, in order to provide a sufficient heating surface, would have to be very long and would thus require a boiler of corresponding length. There can be no reason, however, why such a heater could not be used in a tankless system. The United States patent No. 1,-686,970 to Hoadley (application filed November 28, 1927) shows tubes "placed below the water level of the steam boiler in order that they shall be submerged in the water." In the Hoadley device the cold water flows through a plurality of small tubes to a rear header, thence through a single large tube to the outlet compartment in the front header. Parkinson arranged his small tubes laterally instead of circularly and reversed the flow so as to send the cold water first through the large tube instead of the small ones. The difference between the two systems was, therefore, in adjustment of the parts of a water coil, the inventive concepts being much the same. The United States patent No. 1,-

651,692 to Geaslen (application filed June 24, 1925) describes a heater in which tubes are immersed in the hot water of a boiler and which may be used either with or without a tank. It operates on the same principle as the Parkinson device but employs a series of coils increased in number according to the heating surface required. The attempt of complainants to carry the date of Parkinson's invention back of Hoadley and Geaslen by the testimony of Fettes, the vice-president of the Parkinson Heating Corporation, must fail. It is uncorroborated except by undated sketches and does not meet the strict burden imposed upon patentees in such situations.

It is evident from the state of the art, and particularly from the disclosure of the British patent to Marshall already discussed, that claim 6, if valid in any respect, is limited to the particular improvements and advantages described and claimed. The specification, in setting forth the invention, invariably speaks of a large inlet tube or passage and of a plurality of small outlet tubes or passages. Nowhere is the inlet tube referred to in the plural. Claim 6 carries out this idea by calling for "a large passage leading from said inlet chamber, and small passages leading from said large passage to said outlet chamber, the total heat exchange surface area of said small passages being greater than that of the large passage." The complainants' expert Platt, in discussing the merits of Parkinson's invention, said that: "One of the main points of that patent is the system of a large inlet pipe and a series of small outlet pipes." That is the very feature called for in claim 6.

The alleged infringing heater of the defendant has no single large inlet pipe, but a plurality of small inlet pipes, and the surface areas of his inlet and outlet pipes are the same. We are asked to construe the expression "a large passage" as the equivalent of "a plurality of small tubes," and the word "greater" when used in the claim in reference to the "heat exchange surface area" of the small outlet tubes as meaning no more than "equal." In view of the precise language of claim 6 and the statements in the specification showing the combined advantages of a single large inlet pipe and a plurality of small outlet pipes of a greater surface area, it is now too late for the patentee to assert that defendant's numerous inlet and outlet pipes of equal superficial area are equivalents.

McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 35 L.Ed. 800; Keystone Bridge Co. v. Phoenix Iron Co., 95 U.S. 274, 278, 24 L.Ed. 344; Gillette Safety Razor Co. v. Hawley Hardware Co. (C.C.A.) 64 F.(2d) 10, 11. For the above reasons we are persuaded that claim 6 has not been infringed.

The decree is reversed, with costs to the appellant, and the cause is remanded, with directions to dismiss the bill as to claim 4 for invalidity and as to claim 6 for noninfringement.