## VAN KANNEL REVOLVING DOOR CO. v. GENERAL BRONZE CORPORATION.

### No. 7806.

District Court, E. D. New York.
April 26, 1939.

Munn, Anderson & Liddy, of New York City (Daniel H. Kane and John H. Glaccum, both of New York City, of counsel), for plaintiff.

Moses & Nolte, of New York City (Edmund Quincy Moses, G. Schuyler Tarbell, Jr., and Thornton F. Holder, all of New York City, of counsel), for defendant.

ABRUZZO, District Judge.

Letters Patent No. 1,914,237 were granted on June 13, 1933, to the plaintiff as assignee of Robert L. Blanchard. This suit is brought by the plaintiff against the defendant for infringement of these letters patent.

The invention described and claimed in the patent relates to a wing-locking mechanism for use with a panic proof type of collapsible revolving door. This type of door is one in which the four door wings are supported from a central supporting column so that they are normally disposed in radial position. When this door is operated normally, the four door wings with its supporting column rotate as a unit with the doors in radial position. In the event of a panic, if abnormal pressure is applied to opposing door wings they both collapse and fold, leaving room for persons egressing from the building to pass through the entrance way without interference.

It is claimed by the plaintiff that previous to the present invention door wings were held in radial position by using cables, chains or braces connected between adjacent wings. The adjacent door wings were held in predetermined spaced relationship with respect to each other by means of cables, chains or braces. To release the doorway under this type of mechanism when excessive pressure was applied to opposing door wings, one end of each cable, chain or brace was held in a clamp that was released when this excessive pressure was applied to opposing door wings.

There were many disadvantages pertinent to this type of doorway and they proved unsatisfactory. They may be summarized as follows:

I. In the old type of door the door wings were tied to each other rather than to the central support with the result that release of one door wing released them all. This made it extremely difficult to manage the door wings while the door was being manually collapsed.

II. Since the door wings were tied to each other rather than firmly tied to the central supporting column or shaft, it was possible for the door wings to shift from their radial position while still maintaining their 90-degree relationship between themselves. The result of this was to foreshorten the distance between the edge of the door wings and the supporting column and break the air seal between the edge of the door wings and the revolving door enclosure. Naturally this was undesirable because a revolving door is primarily a closure and if a proper air seal was not formed cold air would be permitted to enter the building.

III. The cables, chains or braces obstructed the space between the door wings and in that way interfered with people, especially when they were carrying parcels or bundles, who were passing through the entranceway. Also after the cables or chains began to fray they would sometimes

catch on the clothing of people, causing damage.

IV. It was difficult to obtain exact adjustment. It will be appreciated that if the door were to operate as a rigid unit it was necessary for the cables, chains or braces to be absolutely taut. Adjustment as to exact length was difficult to obtain and after it was obtained it would not last very long. The constant strain to which they were subjected would cause them to grow or increase in length with the result that there would be a certain amount of play between the door wings causing a noisy chattering operation of the door.

V. The cables, chains or braces formed an attractive nuisance for children who would hang or sit on the cables, chains or braces. This would sometimes cause injury to the children and at other times would cause the door to collapse or under any circumstances, it would stretch or distort the cables, chains or braces.

VI. The cables, chains or braces interfered with the appearance of the door and made the door undesirable from the architectural standpoint. At the point that the cables, chains or braces were connected to the door wing it was necessary to have an opaque panel. This panel was necessarily located adjacent the central portion of the door because the cables, chains or braces had to be connected intermediate the supporting disks which are provided adjacent the top and bottom of the central shaft or column. It was accordingly impossible to make a clear-vision door having a transparent panel extending almost the entire length of each door wing.

The plaintiff claims that Blanchard provided a practical solution of all these problems by inventing a type of door which eliminated these disadvantages. Plaintiff's invention consisted of the provision of a detent supported by the door wing and engageable in a keeper or recess provided in the periphery of the disk mounted on the central supporting column. There is a spring attached to this detent which when pressed pushes the detent into engagement. The pressure or tension of this spring is subject to adjustment which can be regulated by a skilled mechanic. Thus, a doorway can be set up in any building subject to any pressure required to normally operate the doorway by persons entering into and egressing from the building. Mechanically, these doorways can be installed with whatever pressure is needed to meet the existing conditions of any building. The tension or pressure of the spring can be temporarily reduced or disposed of entirely by a porter or building employee by the simple operation of an exposed manipulator on the outside of the door. This would permit the collapse of the door wing without interfering or destroying the adjustment referred to above.

The invention, therefore, consists of a combination of four elements, (1) the detent, (2) the tension or pressure means for applying force to the detent, (3) the adjusting mechanism for adjusting the amount of force exerted by the tension or pressure means, and (4) the exposed manipulator for temporarily reducing the force without disturbing the adjustment that forms the essential part of the invention.

The detent is represented in the drawings of the patent (figure 2) as a round ball (No. 11), approximately one-half inch in diameter. The spring is adjacent to and attached to this ball or detent and is about two inches long (No. 25). At the end of the spring and connected therewith is a screw threaded plug (Nos. 19, 20 and 21) which is the adjustment mechanism for adjusting the force to be exerted by the spring on the detent or round ball. This screw threaded plug can be adjusted at will by a skilled mechanic to meet whatever conditions exist at the time the doorway is installed. The handle which constitutes the exposed manipulator can be readily seen on each door wing near the top. The force exerted by this two inch spring can be temporarily adjusted so that the door can be collapsed without destroying the adjustment controlled by the screw threaded plug. The type of door thus described has eliminated the necessity of any chains, cables or braces.

A wing-locking device containing the combination of elements referred to is provided in each door wing adjacent to each of the disks. This type of mechanism permits each door wing to be independently retained in radial position without the use of cables, chains or braces.

It will be readily noted that it was the intention of the patentee to invent a door that could be set up easily to meet the various statutes in different localities. The screw threaded plug thus becomes a very important element of this patent because that is the adjustment mechanism for controlling the force to be exerted by the

spring on the detent or round ball. The plaintiff contends that a skilled mechanic could readily adjust the door to meet any of the requirements of various local statutes. It was also designed to be easily adjusted to overcome any natural obstacles to be met; for example, installation in a building situated on a corner where there was a constant high wind.

The defendant contends that the plaintiff is not entitled to the patent in suit. He cites many patents as an indication of the state of the prior art, setting forth that all of the plaintiff's claims for his invention were anticipated in prior art. It does not seem necessary to discuss each and every patent set up in the defense of this defendant.

There are many examples of braceless doors in patents cited by the defendant (Quay No. 1,030,849; Dyer No. 1,206,824; Sunderland No. 1,489,022; French patent to Alkan No. 670,218 and others). These were issued before the patent in suit. Pressure releasing mechanisms so as to permit the door wings to fold in conveniently were taught by the Sunderland patent. The adjusting mechanism and manual release in combination so that operation of the manual release does not in any way disturb the adjustment as claimed by the plaintiff's patent could have been taught to him by the prior patents of Quay, Sunderland and Dyer.

The Quay patent shows a locking device engaging the leaves near the top and bottom of the door. It shows several forms of yielding keepers for the leaves, adapted to yield under panic conditions. It has several means for retracting the keepers so as to permit the leaves to be readily folded by manual pressure.

In the Dyer patent, a diagram shows how, by operating a key, the tension can be relieved from the holding means of the leaves of the door so that the wings can be readily folded.

The French patent to Alkan, issued in 1929, is comparable to the plaintiff's construction under its patent. Each wing-locking device, as taught in the French patent, comprises a spring pressed ball engaging in a notch or keeper on the wing hanger. This ball (i) is mounted in the socket (h') and is forced in locking position by spring (j) (defendant's exhibit I, figure 1 of the patent illustration). This spring is apparently held in position by a screw plug constituting an abutment.

There is some criticism of this screw plug by the plaintiff. It construes this screw plug as a welded-on plug or a stationary one. It is obvious, however, that any one skilled in the art could conclude that this screw plug was not stationary since some means would have to be provided for the replacement of the spring in case of wear or breakage. Unquestionably, the answer is that a screw plug is indicated by the patent.

The French patent to Alkan clearly shows door leaves individually locked in radial position by spring pressed balls operating radially inward, that is, towards the axis of the door, readily accessible means being provided for adjusting and releasing the tension on the springs.

The Sunderland patent discloses a panic proof, chainless door having individual wing-locking means for each wing, and means for releasing the individual wing-locking devices so as to permit folding of the wings. It teaches the idea of releasing the pressure on the spring to permit the wing to be folded. It also reaches the method of restoring such pressure to the predetermined strength or set pressure of the spring when the door is in normal operating position.

This latter patent is owned by Blanchard and he was entirely familiar with and had full knowledge of its teachings.

Defendant's exhibit "Z", a model of the Sunderland patent, discloses an equivalency to the plaintiff's patent with respect to the means of locking each wing and releasing them.

The main claims of the Blanchard patent (assigned to plaintiff) are completely anticipated by the Sunderland patent and the French patent to Alkan, thereby overcoming the presumption of validity which attaches to the plaintiff's patent because of its issuance by the Patent Office. The Quay, Sunderland, Dyer and French patent to Alkan were not before the Patent Office when the claims of the Blanchard patent were allowed.

Undoubtedly, the plaintiff's patent improved, to some extent, the apparatus or method taught by these prior patents, but this is not invention. It is the exercise of the mechanical skill of one who knows the art of making revolving doors. Under these circumstances, the plaintiff is not entitled to a holding that his construction is patentable. Electric Cable Joint Co.

334

v. Brooklyn Edison Co., 292 U.S. 69, 54 S.Ct. 586, 78 L.Ed. 1131; Parkinson Heating Corporation, et al. v. Goldenstein, 2 Cir., 91 F.2d 968.

Plaintiff's patent contains nothing new or novel. The detent which consists of a round ball is taught in the French patent to Alkan. The spring which is the controlling force for the tension or pressure is clearly indicated in the French patent. The screw plug at the end of the spring in the French patent to Alkan was sufficiently clear to those skilled in the art to indicate that a means would have to be provided for reaching this spring in case of its tension becoming lessened or of its breaking. The exposed manipulator for temporarily reducing the force without disturbing the adjustment so that a door wing could be easily collapsible is shown in the Quay and Dyer patents. Plaintiff did not originate any of these important elements essential to a revolving door. Its patent contains an aggregation of pre-existing teachings in the art.

■ For these reasons, the plaintiff's patent cannot be held valid because of the state of the prior art. Consequently, in view of this finding, it is unnecessary to pass upon the question of infringement.

Submit decree in favor of the defendant in accordance with this decision.